UNITED STATES of America,
Plaintiff–Appellee,

v.

Karl HOFSTATTER (92–1836) and
Michael Griffor (92–1805),
Defendants–Appellants.

Nos. 92–1805/1836.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1993.

Decided Sept. 28, 1993 [1].

1. This decision was originally issued as an "unpublished decision" filed on September 28, 1993. On October 18, 1993, the court designated the opinion as one recommended for full-text publication.

Terrence G. Berg (argued and briefed), Office of the U.S. Atty., Detroit, MI, for U.S.

Douglas R. Mullkoff (argued and briefed), Ann Arbor, MI, for Michael Edward Griffor.

F. Randall Karfonta (argued and briefed), Mogill, Posner & Cohen, Detroit, MI, for Karl Hofstatter.

Before: NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

Under 21 U.S.C. § 841(d)(1), it is a criminal offense knowingly or intentionally to possess a "listed" chemical with intent to manufacture a controlled substance. Under 21 U.S.C. § 813, as enacted in the Controlled Substance Analogue Enforcement Act of 1986, a "controlled substance analogue" is treated as a controlled substance to the extent that it is intended for human consumption.

The defendants in the case at bar were found guilty of possessing and conspiring to possess the chemicals ephedrine and phenylpropanolamine—"listed precursor chemicals" under 21 U.S.C. § 802(34)(C) and (I)—with intent to manufacture controlled substance analogues. One of the questions raised by the defendants in their appeal is whether, under the circumstances of the present case, the statutory definition of a controlled substance analogue (see 21 U.S.C. § 802(32)) is unconstitutionally vague. Concluding that the statute does not run afoul of the void-for-vagueness doctrine in its application here, and resolving the remaining issues in favor of the government as well, we shall affirm the convictions of both defendants and reject a challenge one of them has made to his sentence.

## I

In May of 1989 the Drug Enforcement Administration received information from a chemical company in Connecticut that a suspicious order had been received from "JAH Company," of Ann Arbor, Michigan, for the chemical phenylpropanolamine. The DEA subsequently monitored numerous purchases of precursor chemicals by defendants Hofstatter and Griffor, ostensibly acting on behalf of JAH or "Robert Kaye and Company." On one occasion defendant Griffor was found to have used the name "Michael Edwards" in picking up a shipment of ephedrine.

On June 20, 1991, agents of the DEA executed a warrant to search the premises at 712 and 715 East Kingsley, in Ann Arbor,

where the defendants had gone after one of their pickups of chemicals. At 712 East Kingsley the agents found laboratory equipment and supplies, including vacuum flasks and a turkey baster, along with written records of experiments involving the manufacture of methylcathinone, an analogue of the controlled substance methamphetamine. In a box with chemicals and equipment was a notebook detailing the experiments. One entry in the notebook read as follows: "let some sit for 3 days (less smell) closer to amphed." Another read "took first sample at 8:00 pm—quality: (all est. from - 1—+ 10) euphoria (7), speed (6), conversation (8), smell (2) * taste (1), jones (4) (one being no jones)." Taped to the inside covers of the notebook were photographs of Mr. Griffor and his dogs. Also seized were personal papers of Mr. Hofstatter and address books containing names of chemical supply companies and various chemical formulae. In a kitchen freezer agents found more than a kilogram of phenylpropanolamine solution. Elsewhere in the house they found chemicals needed for the manufacture of methylcathinone, cathinone, 4–methylaminorex, and n–methyl–4–methylaminorex. There was no toluene (a solvent widely used in making such substances), but, as noted above, there was evidence that toluene had been used.

Mr. Griffor's automobile, which had been used the day before to pick up ephedrine, was parked in the driveway of 715 East Kingsley. The automobile was also searched. Inside the car were found two bags containing personal papers, notebooks, and envelopes in the name of Mr. Hofstatter. The documents described "khat" (an East African plant containing cathinone) and methylaminorex (a drug also known as "rex" or "U4euh," a homophone of euphoria). Formulae for the manufacture of methylcathinone were found in the car, as was a Federal Register notice indicating that methylaminorex was to be scheduled as a controlled substance by the DEA.

The defendants were indicted on charges of conspiracy to possess listed chemicals with intent to manufacture controlled substances and controlled substance analogues (count one); possession of listed chemicals with intent to manufacture controlled substance analogues and controlled substances (counts two as to Griffor, three as to Hofstatter, and four, five, and six); conspiracy to open or maintain a place for the purpose of manufacturing controlled substance analogues and controlled substances (count seven), and endangering human life while attempting to manufacture a controlled substance illegally (count eight as to Hofstatter).

DEA chemist Terry Dal Cason determined that the seized documents contained 23 iterations of the formula for manufacturing methylcathinone. Cason testified at trial that the defendants had the chemicals and the know-how necessary to manufacture methylcathinone, cathinone, 4–methylaminorex, and n–methyl–4–methylaminorex. Cason also testified that methylcathinone has a chemical structure substantially similar to that of the controlled substance methamphetamine; that cathinone has a chemical structure substantially similar to that of amphetamine, which is likewise a controlled substance; that 4–methylaminorex is a controlled substance; and that n–methyl–4–methylaminorex has a chemical structure substantially similar to that of 4–methylaminorex.

DEA Agent Mary Sandy testified that while posing as a chemical supply store employee she had twice sold listed precursor chemicals to Mr. Hofstatter. She went on to tell the jury that after the ephedrine purchase on June 19, 1991, agents followed Messrs. Hofstatter and Griffor to 715 Kingsley in Ann Arbor, where Mr. Hofstatter removed items from Mr. Griffor's car while it was parked in the driveway. Through the car window Agent Sandy was able to see a computer and other items.

The government also introduced evidence that in May of 1987 local authorities had discovered chemicals, laboratory equipment, formulae, and small quantities of 4–methylaminorex in a trailer rented by Mr. Hofstatter in Pasco County, Florida. It would be fair to infer from this evidence that the trail-

---

* A note connected to the rating for "smell" read as follows: "smells as if we did not get all of toluene out but K insists that we did. I am going to reclean some and find out."

er had been used as a site for illicit manufacture of a controlled substance.

The jury found Mr. Hofstatter guilty on all counts in which he was charged except counts seven and eight. Mr. Griffor was convicted on all of the counts in which he was charged except counts two and seven.

Mr. Hofstatter was sentenced to concurrent terms of imprisonment for 96 months. The sentence reflected a two-level enhancement in Mr. Hofstatter's guideline offense level because of his having played a leadership role. Mr. Griffor was sentenced to concurrent sentences of 36 months. Both defendants perfected timely appeals.

## II

### 1. *The Controlled Substance Analogue Enforcement Act of 1986*

Under 21 U.S.C. § 813, as noted above, a "controlled substance analogue" is treated as a controlled substance to the extent that the analogue drug is intended for human consumption. The statutory definition of a controlled substance analogue, subject to exceptions not relevant here, is as follows:

"a substance—

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." 21 U.S.C. § 802(32)(A).

■ The defendants argue that this statute is void for vagueness under the Fifth Amendment because the "substantially simi-

lar" language is insufficiently precise. Under *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), a penal statute must define the offense with sufficient definiteness to enable ordinary people to understand what conduct is prohibited—see *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)—and must do so in a manner that does not encourage discriminatory enforcement. Except where First Amendment rights are involved, vagueness challenges must be evaluated in the light of the facts of the case at hand. See *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). The latter principle was recognized and applied in *United States v. Forbes*, 806 F.Supp. 232, 237 (D.Colo.1992), where the "substantially similar" component of 21 U.S.C. § 802(32)(A) was held to be unconstitutionally vague as applied to alphaethyltryptamine (AET). (AET had been marketed by Upjohn Chemical Corporation as an anti-depressant, but had been taken off the market after some patients experienced toxic side effects from it.)

■ Under the evidentiary record presented here, it seems clear that the statutory language was sufficiently precise to enable an ordinary person in the position of Mr. Hofstatter or Mr. Griffor to know that listed precursor chemicals such as ephedrine and phenylpropanolamine should not be possessed for the purpose of manufacturing, for human consumption, substances similar to amphetamine, methamphetamine, and 4–methylaminorex. The presence in Mr. Griffor's automobile of the DEA's Federal Register notice on the listing of methylaminorex as a controlled substance is significant in this regard, as is the defendants' reluctance to use their own names in ordering chemicals from which controlled substance analogues could be manufactured. It is true that the chemicals in question could be put to legitimate uses—and the defendants emphasize their interest in crystal growing and other harmless activities—but the notebooks and other documentary evidence introduced in this case provide ample support for the conclusion that the defendants were attempting to manufacture substances designed for human con-

sumption and designed to produce amphetamine-like effects when ingested. This case bears a much closer resemblance to *United States v. Desurra*, 865 F.2d 651 (5th Cir. 1989), and *United States v. Granberry*, 916 F.2d 1008 (5th Cir.1990), where the constitutionality of the Analogue Act was upheld as applied to amphetamine-like substances, than it does to *United States v. Forbes.*

■ It is true that the statute does not specifically list the chemicals that are controlled substance analogues. Given the creativity of amateur chemists, such a list might well be impossible to compile. In any event, as the jury was explicitly told, the Act deals only with chemicals "intended for human consumption." 21 U.S.C. § 813. This intent requirement sufficiently constrains law enforcement officials and discourages arbitrary or discriminatory application of the law. See *Village of Hoffman Est. v. Flipside, Hoffman Est.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

### 2. *The Search of Mr. Griffor's Car*

Both defendants challenge the search of Mr. Griffor's car. The government argues that Mr. Hofstatter lacks standing to make such a challenge. Because of our disposition of the merits of the defendants' search arguments, we need not address the issue of Mr. Hofstatter's standing.

■ The district court determined that the law enforcement officials had probable cause to search the car. We review this finding under the clearly-erroneous standard. See *United States v. Sangineto–Miranda*, 859 F.2d 1501, 1508 (6th Cir.1988). Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). In determining whether probable cause exists, courts look to the totality of the circumstances. See *id.* at 230–31, 103 S.Ct. at 2328.

■ The DEA clearly had probable cause to search Mr. Griffor's automobile. DEA Agent Sandy sold listed precursor chemicals to Karl Hofstatter, who took them away in the car. He was subsequently observed removing items from the vehicle. The vehicle was then parked in the driveway of a residence for which the agents had obtained a search warrant. Agent Sandy was able to observe through the window of the car a computer—an instrument often associated, according to her testimony, with clandestine drug manufacturing.

Citing *California v. Acevedo,* — U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), Mr. Griffor argues that if the DEA agent had probable cause to search the computer, she did not have probable cause to search elsewhere. This argument rests on the assumption that the only observation giving rise to probable cause was the observation of the computer. The agent knew, however, that the defendants had purchased listed precursor chemicals and were removing items from the vehicle at an address for which she had a valid search warrant. Under the totality of the circumstances, there was probable cause to search the vehicle itself. Although the government might have had time to secure a warrant to search the automobile, there was no requirement that it do so. The Supreme Court has long recognized an "automobile exception" to the search warrant requirement. See, *e.g.*, *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

### 3. *Mr. Hofstatter's Prior Acts*

Applying Rule 404(b), Fed.R.Evid., the district court ruled that the "other acts" evidence concerning Mr. Hofstatter's activities in Florida in May of 1987 was relevant to the issue of Hofstatter's knowledge of the manufacturing process for 4–methylaminorex and was more probative than prejudicial. Mr. Hofstatter argues that the admission of this evidence was an abuse of discretion because (1) there was insufficient evidence to link him to the manufacture of methylaminorex; (2) the activity in Florida was too remote in time; (3) methylaminorex was not a controlled substance in 1987; and (4) the government made inflammatory references to damage at the trailer home. Mr. Griffor argues that the district court abused its dis-

cretion when it denied his motion for severance.

■ We do not find any of Mr. Hofstatter's arguments persuasive. Testimony was presented to show that Hofstatter was the only lessee of the Florida trailer. His landlord stated her daughter shipped some of his possessions to him after the laboratory was discovered. Hofstatter later picked up the remainder from storage. The landlord's daughter testified that she overheard a conversation between Mr. Hofstatter and her boyfriend in which they discussed the effects of "rex" and how they liked it. A photograph found among Mr. Hofstatter's personal effects in Ann Arbor showed individuals sitting in front of the trailer holding laboratory glassware. The evidence was sufficient to support a jury finding that Mr. Hofstatter was involved in the manufacture of methylaminorex in Florida, and *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), supports the conclusion that the evidence was admissible.

■ The clandestine Florida laboratory was discovered some two years before commencement of the conspiracy in the instant case. Under *United States v. Feinman,* 930 F.2d 495, 499 (6th Cir.1991), the prior acts conduct must be reasonably near the charged offense in time. Because both the instant case and the prior acts evidence involved ongoing drug manufacturing operations, the two year period separating the two operations is not unreasonably long.

■ Rule 404(b) does not limit itself to the admission of evidence of other crimes. Although the manufacture of methylaminorex was not proscribed in 1987, such manufacture was a relevant act under § 404(b).

The landlord testified that the counter-top in the trailer had been burned, that the carpet looked as if parts of it had been "disintegrated" by chemicals, and that the bathtub had bad stains. Mr. Hofstatter made no objection to this testimony at trial. The evidence was relevant to the issue of the use to which Mr. Hofstatter put the trailer, and the district court was under no obligation to exclude the evidence *ex mero motu.*

Mr. Griffor contends that the admission of the Florida evidence caused a prejudicial "spillover" effect that required a severance under Rule 14, Fed.R.Crim.P. The district court refused to grant a severance. The court did give a limiting instruction, however, cautioning the jurors that the Florida testimony could not be considered in any way against Griffor.

■ We apply an abuse-of-discretion standard in reviewing a denial of severance. See *United States v. Zalman,* 870 F.2d 1047, 1053 (6th Cir.), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3248, 106 L.Ed.2d 594 (1989). As a general rule, in conspiracy cases, persons jointly indicted should be tried together—and the defendant has the burden of proving substantial prejudice resulting from a refusal to grant a separate trial. See *id.* Mr. Griffor proved no such prejudice, and we find no abuse of discretion in the denial of the request for a severance.

### 4. *Testimony of Stephen Lamb*

■ Stephen Lamb testified for the government that he purchased "rex" and "cat" at 815 Lawrence Street in Ann Arbor. During the time frame in which Lamb was frequenting the Lawrence address, defendant Hofstatter was purchasing cyanogen bromide, an ingredient used to manufacture methylaminorex. A purchase order for the cyanogen bromide, issued in the name of "Robert Kaye and Company," listed 815 Lawrence Street as the purchaser's address. Mr. Hofstatter used the same address for a purchase of methylalcohol during the same time period.

Mr. Lamb identified defendant Griffor as a person he saw at 815 Lawrence when purchasing "cat"—and Mr. Griffor admitted that he was staying there during this period. Brian Mulligan testified that Mr. Hofstatter stayed in the basement at 815 Lawrence and performed chemical experiments there.

Mr. Lamb's testimony that "cat" was sold at 815 Lawrence while Mr. Hofstatter was staying there and while Hofstatter was performing experiments with precursor chemicals was highly probative. It showed the purpose to which the precursor chemicals were likely put. Like the district court, we

conclude that Mr. Lamb's testimony was admissible.

▆▆▆▆ Mr. Hofstatter also argues that the district court erred in refusing to permit cross-examination as to the amount of marijuana involved in a state criminal charge pending against Mr. Lamb. A reasonable limitation on cross-examination will not violate a defendant's Sixth Amendment right to confrontation, however, where the jury is given sufficient information to evaluate the witness' motives and bias. See *United States v. Touchstone,* 726 F.2d 1116, 1123 (6th Cir.1984). The proper scope of cross-examination is committed to the sound discretion of the trial court. See *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931). The jury in the instant case heard cross-examination concerning Lamb's drug abuse, his involvement in drug activity, and his cooperation with the authorities based on an agreement that he would not be indicted by the United States for LSD distribution and that leniency would be sought for him in his state case. The absence of information as to the exact quantity of marijuana involved in Lamb's state case was not an unreasonable interference with Mr. Hofstatter's Sixth Amendment right to confrontation.

### 5. Sufficiency of the Evidence

▆▆▆ Mr. Hofstatter notes that no finished controlled substances or controlled substance analogues were found among his supplies and possessions and that certain cleaners or solvents normally used for manufacturing such chemicals were also absent. Mr. Hofstatter also points to evidence that he used ephedrine to produce optical devices, lens coatings, crystal jewelry, and other items.

▆▆▆ The test for weighing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This court must consider all of the evidence, direct as well as circumstantial, in the light most favorable to the government. See *United*

*States v. Seltzer,* 794 F.2d 1114, 1119 (6th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). The government is entitled to the benefit of all reasonable inferences that can be drawn from the evidence. See *United States v. Woods,* 877 F.2d 477, 479 (6th Cir.1989). Applying these principles here, we have no hesitation in rejecting the challenge to the sufficiency of the evidence.

### 6. Alleged Prosecutorial Misconduct

At one point during trial the prosecution asked a witness to identify an envelope addressed to Mr. Hofstatter at "Elgin Air Force Base," where a federal prison is now located. The prosecution also stated to the jury that defense counsel's closing arguments had made things "less and less clear." There was no contemporaneous objection to either the Elgin Air Force Base reference or the comment made in closing argument.

▆▆▆ The conduct in question must be viewed against the entire record. See *United States v. Causey,* 834 F.2d 1277, 1284 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). To justify granting a new trial, misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process, see *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986), or must have been so pronounced and persistent as to permeate the entire atmosphere of the trial. See *United States v. Vance,* 871 F.2d 572, 577 (6th Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

▆▆▆ It is by no means self-evident that the jury would have recognized Elgin Air Force Base as a federal prison. We are not persuaded that the reference to the base was comparable to a reference to Alcatraz or San Quentin. The prosecutor's assessment of defense counsel's closing arguments came in the form of a short, limited comment that did not taint the fairness of the trial. If either of the statements complained of amounted to prosecutorial misconduct—and we doubt that either did—the record of trial as a whole is

not such as to warrant the granting of a new trial.

### 7. Hofstatter's Sentencing

■ Mr. Hofstatter's base offense level was determined with reference to the amount of precursor chemicals possessed with the intent to manufacture. See, e.g., U.S.S.G. § 2D1.11(d)(4) (ephedrine). The district court relied on sales records in determining that 2,040 grams of ephedrine had been purchased. The court then reduced that amount by 100 grams because it believed that some of the chemical had been used for legitimate purposes. The factual finding as to the amount of ephedrine involved in the offense is not clearly erroneous. See United States v. Walton, 908 F.2d 1289, 1300–01 (6th Cir.), cert. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

The district court also made a factual finding that Mr. Hofstatter had a leadership role in the offense; his base offense level was therefore increased by two levels. See U.S.S.G. § 3B1.1. The court reached this decision because Mr. Hofstatter had recruited Mr. Griffor and was more heavily involved in planning the crime. This finding too is reviewed under the clearly-erroneous standard. See United States v. Williams, 894 F.2d 208, 213–14 (6th Cir.1990). The evidence amply supports the district court's finding as to Mr. Hofstatter's role in the offense; the finding is not clearly erroneous.

**AFFIRMED.**