50 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry D. MARLOW, Defendant-Appellant.
 No. 93-6325.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1995.
 
 Before: MILBURN, BOGGS, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Larry D. Marlow appeals his conviction and sentence in this drug manufacturing case. The jury convicted Marlow of manufacturing more than 100 marijuana plants, in violation of 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B). The district court sentenced Marlow to a seventy-eight-month prison term. For the reasons set out below, we affirm.
 
 
 2
 * On August 4, 1992, members of the Tennessee Highway Patrol, Aviation Unit, observed marijuana growing near Highway 90 in Claiborne County, Tennessee. Agents searched the area and discovered four patches of marijuana. Marlow consented, in writing, to a search of his home and property. The search revealed the following:
 
 Home:
 
 3
 Two receipts indicating the purchase of eight bags of lime, four fifty-pound bags of 6-12-12 fertilizer, and four fifty-pound bags of 10-10-10 fertilizer.
 
 
 4
 Shed belonging to John Trammel, but used by Marlow:
 
 
 5
 Starter trays, flower pots, potting soil, lime, post-hole diggers, a shovel, a metal fence post driver, and a sickle.
 
 Blue building inside Marlow's yard:
 
 6
 A "four-wheeler" vehicle (ATV), several small bags of Miracle-Gro plant food, and starter trays. In the attic was a platform allegedly used to dry marijuana. On the platform was fresh marijuana residue.
 
 
 7
 Outside the buildings, the agents found two green metal fence posts and two 2"' X 2" X 8' wooden stakes. The evidence showed that on June 19, 1992, Marlow had purchased 100 fence posts and one-half mile of wire.
 
 
 8
 The agents found four patches of marijuana. Each patch contained plants eight to nine feet tall. The total number of plants in all of the patches was approximately 755. Chicken wire fences supported by green metal fence posts surrounded the patches. The marijuana plants were tied to wire strung between 2" X 2" X 8' wooden stakes.
 
 
 9
 The patches themselves were on property belonging to the heirs of John Trammel. Patch 1 contained 315 plants. Agents found the patch across an old access road once used for a strip mine. A four-wheeler trail from the back of the blue building led to the road. Agents found Patch 2 at the end of a path that began at a clearing behind the Marlow home. This patch contained 172 growing plants and fifty-two cut plants, for a total of 224 plants. Along the path, agents found a Miracle-Gro plant food bag and a bag of 10-10-10 fertilizer. Agents also discovered in Patch 2 a green garden hose used for irrigation. The hose led back to the side of the blue building.
 
 
 10
 The agents found Patch 3 at the end of a second path leading from the clearing behind the Marlow home. This patch contained forty plants; four-wheeler tracks led up to the path. The agents found Patch 4 at the end of a third path leading from the clearing behind the Marlow home. This patch contained 176 plants. A garden hose also led to Patch 4. This hose originated at the blue building. Four-wheeler tracks led to the path to Patch 4.
 
 
 11
 The agents described the land surrounding the patches as rugged, hilly and covered with dense brush. The paths were the only realistic access to the patches. Finally, all of the plants had been "sexed." This means that whoever grew the plants removed the males to prevent dilution of the more powerful THC in the female plants.
 
 II
 
 12
 Marlow argues that the evidence presented by the prosecution was insufficient for the jury to reach a guilty verdict. In challenging a guilty verdict through a claim of insufficiency of evidence, Marlow bears a heavy burden. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986). We must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987).
 
 
 13
 In considering the evidence, we view both the circumstantial and direct evidence in a light most favorable to the prosecution. United States v. Hofstatter, 8 F.3d 316 (6th Cir.1993), cert. denied, 114 S.Ct. 1101 (1994). Furthermore, the application of this standard requires us to consider all reasonable inferences from the evidence in favor of the prosecution. United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982).
 
 
 14
 In order for the jury to have found Marlow guilty of violating 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(B), the prosecution must have proven that Marlow knowingly or intentionally manufactured a controlled substance. Based on: (1) the care with which the patches were laid out; (2) the volume of plants in the patches; (3) the use of an irrigation system and fertilizers; and, (3) the "sexing" of the plants, a rational jury could conclude that whoever grew these plants did so intentionally. Furthermore, a rational jury could conclude that Marlow had cultivated the marijuana in question, based on: (1) Marlow's proximity to the patches; (2) the marijuana found on a drying rack in a shed used by him; (3) the hoses running to the patches from the shed in his yard; (4) the similarity of posts and stakes found at the home and in the patches; (5) the paths leading to his property; and, (6) the similarity of the fertilizer and Miracle-Gro purchased by or found at Marlow's house and those found at the patches. Therefore, the evidence is sufficient to sustain the jury's verdict and we affirm the conviction.
 
 III
 
 15
 Marlow argues that comments made by the judge during the sentencing hearing demonstrate that the judge was unaware of his right to grant a downward departure in unusual circumstances. In particular, Marlow cites the following:
 
 
 16
 To respond to the comments that Mr. Rose has made, the sentencing guidelines have been the subject of a number of judicial conferences, recommendations to Congress. The minimum sentences that are imposed, are mandatory upon this court, takes away the court's discretion, and unless there is a motion made on the part of the government for a downward departure or unless the defense presents to this court mitigating circumstances to the extent that they are recognized by the guidelines, then this court's hands are tied.
 
 
 17
 A court's erroneous belief that it lacks discretion to depart downward from the calculated sentence is appealable. See United States v. Brown, 985 F.2d 478 (9th Cir.1993); United States v. Gaskill, 991 F.2d 82 (3d Cir.1993); United States v. Califano, 978 F.2d 65 (2d Cir.1992). The Sixth Circuit has held that a court's misunderstanding of its authority is a basis for appeal: "in the event that the district court had misunderstood its authority, we would be required to remand...." United States v. Isom, 992 F.2d 91 (6th Cir.1993).
 
 
 18
 The judge acknowledged that he could depart if the government made a motion or if "the defense presents to this court mitigating circumstances to the extent that they are recognized by the guidelines." The judge's statement that "this court's hands are tied" refers to the judge's, and the guidelines, rejection of Marlow's proposed mitigating factors.
 
 
 19
 "[W]hen the sentencing range is properly computed, the district court is aware of its discretion to depart, and the sentence is not imposed in violation of law or as the result of an incorrect application of the Sentencing Guidelines, a failure to depart is not a cognizable basis for appeal." Isom, 992 F.2d at 94. See also United States v. Brannon, 7 F.3d 516, 520 (6th Cir.1993).
 
 IV
 
 20
 The final issue Marlow raises is ineffective assistance of counsel at the sentencing hearing. Marlow concedes that his seventy-eight month sentence is at the bottom of the guideline range. However, he argues that effective counsel would have secured a departure downward to the sixty-month mandatory minimum.
 
 
 21
 Normally, the only avenue for Marlow to raise the issue of ineffective assistance of counsel would be through a collateral attack on his conviction under 28 U.S.C. Sec. 2255. United States v. Goodlett, 3 F.3d 976, 980 (6th Cir.1993). This rule allows the parties to develop fully the factual record. However, if the parties have adequately developed the record the issue can be addressed on direct appeal. Ibid. Because both parties agree that they have fully developed the record, we will address the issue now.
 
 
 22
 Marlow claims that the attorney who argued at the sentencing hearing failed to raise issues that would have resulted in a downward departure. To succeed on a claim for ineffective assistance of counsel Marlow must do more than demonstrate that had counsel acted otherwise the outcome would have been different. Marlow must demonstrate that the errors are so serious that they have yielded a result that is unfair or unreliable. Lockhart v. Fretwell, --- U.S. ----, 113 S.Ct. 838 (1993); Strickland v. Washington, 466 U.S. 668, 687 (1984). "Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally fair or unreliable, is defective." Lockhart, 113 S.Ct. at 842-43.
 
 
 23
 The presentence report contains each issue raised by Marlow. The judge mentioned several of these issues during sentencing. Marlow's attorney also mentioned several of these issues, as did Marlow himself. Furthermore, Marlow received the lowest possible guideline sentence. "Because the result of the sentencing proceeding in this case was ... neither unreliable nor fundamentally unfair," we affirm the sentence. Lockhart, 113 S.Ct. at 841.
 
 V
 
 24
 The judgment of conviction and the sentence of the district court are AFFIRMED.