**UNITED STATES of America,**

v.

**Richard Lester KLECKER, Defendant.**

**No. CR. 2:02cr68.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 18, 2002.

---

Laura P. Tayman, AUSA, United States Attorney's Office, Norfolk, VA, for Plaintiff.

David Wayne Bouchard, Bouchard & Smith, Chesapeake, VA, for Defendant.

## OPINION AND ORDER

MORGAN, District Judge.

In April 2002 the Defendant and a co-Defendant, Timothy Luken, were charged in a multi-count indictment. The indictment charged the Defendant with conspiracy to distribute and possess with intent to distribute MDMA (commonly known as "Ecstasy," a schedule I controlled substance) and controlled substance analogues, namely 5–methoxy–N, N-diisopropyltryptamine (5–MeO–DiPT), also known as "Foxy," and alpha-methyltryptamine (AMT), ten counts of distribution and possession with intent to distribute MDMA and controlled substance analogues, two counts of distribution of the analogues to persons under 21 years of age, one count of maintaining a drug establishment, and possessing firearms in furtherance of drug trafficking, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), 859, 856 and 18 U.S.C. § 924(c).

Defendant, Richard Lester Klecker, filed a motion to dismiss challenging the constitutionality of the Controlled Substance Analogue Statute, 21 U.S.C.

§ 802(32). Defendant moved to dismiss those parts of the indictment charging him with distribution of 5–MeO–DiPT, also known as "Foxy," and AMT on the grounds that 1) prosecution of those portions of the indictment violate the due process clause of the Fifth Amendment in that 21 U.S.C. § 802(32) which defines a controlled substance analogue is unconstitutionally vague and constitutes an *ex post facto* law; 2) that the definition of a controlled substance analogue as applied to "Foxy" and AMT is unconstitutionally vague; and 3) that "Foxy" and AMT have not been determined and announced to the public as controlled substance analogues and declared illegal prior to the purchase and distribution by the Defendant, and are not illegal under the Analogue Act. An evidentiary hearing was held on the motion on August 19 and 20, 2002 and the Court ruled from the bench. This Order sets forth more fully the Court's reasoning.

## PROCEDURAL AND FACTUAL BACKGROUND

In late January 2002, Naval Criminal Investigative Services (NCIS) agents received information from a confidential source that the Defendant was manufacturing tablets of an alleged analogue drug called "Foxy." During the course of the ensuing investigation, a cooperating witness and an undercover agent made several purchases of "Foxy" and AMT from the Defendant and co-Defendant, Timothy Luken.

Although he initially manufactured the pills in capsule form, the Defendant later purchased a tablet press which he thereafter used to manufacture tablets of "Foxy" and AMT. On March 14, 2002, search warrants were issued for Luken's residence and the Defendant's residence. Prior to the execution of the search warrants, the Defendant moved the tablet press from his apartment to a Virginia Beach location and requested his roommate to dispose of the pills if the law arrived. The Defendant's roommate was inside the Defendant's apartment holding a .38 caliber revolver when the search warrant was executed. Agents recovered 535 AMT pills in the bathroom, 212 grams of pure "Foxy" in the freezer, cutting and binding agents, and a videocassette and manual describing the operation and maintenance of the tablet press. In addition, agents recovered the .38 caliber revolver, a loaded shotgun, and an unloaded rifle. On March 15, 2002, agents recovered the tablet press and 160 tablets of "Foxy" from the Virginia Beach location.

## LEGAL ANALYSIS

### The Analogue Act

This motion requires the Court to interpret the Controlled Substance Analogue Enforcement Act of 1986 (the "Analogue Act"). 21 U.S.C. § 802(32)(A). The indictment charges the Defendant with conspiracy to distribute and possess 5–MeO–DiPT ("Foxy") and AMT. The Government alleges that "Foxy" is a controlled substance analogue of diethyltryptamine (DET), a schedule I controlled substance, and that AMT is a controlled substance analogue of alphaethyltryptamine (AET), also a schedule I controlled substance. Except as provided in subparagraph (C), which is not applicable here, the Analogue Act defines a "controlled substance analogue" as a substance—

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on

the central nervous system of a controlled substance in schedule I or II; or (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). To the extent that a controlled substance analogue is "intended for human consumption," it is treated as a schedule I controlled substance for purposes of any federal law. 21 U.S.C. § 813.[1]

At issue in the charges against the Defendant are three substances: 1) MDMA; 2) 5–MeO–DiPT or "Foxy"; and 3) AMT. Although MDMA, also known as "Ecstasy," is a schedule I substance,[2] "Foxy" and AMT are not, requiring the Government to prove that "Foxy" and AMT are controlled substance analogues under the statute.

### Is the Analogue Act unconstitutionally vague?

Defendant's first two arguments challenge the constitutionality of the Analogue Act both on its face and as applied. Defendant argues that the Analogue Act is unconstitutionally vague because the Defendant has no reasonable basis for knowing what substance is illegal if it is not defined as illegal by appropriate statute and because the definition of an analogue, as applied to "Foxy" and AMT, neither fairly warns nor effectively safeguards against arbitrary enforcement. Based on the following rationale, the Court **FINDS** that the Analogue Act is neither unconstitutionally vague on its face nor unconstitutionally vague as applied to "Foxy" and AMT.

### Vagueness Challenges

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974).

A number of courts have addressed whether the Analogue Act is unconstitutionally vague. Holding that the Analogue Act was not unconstitutionally vague, the Fifth Circuit stated:

[T]he term "controlled substance analogue" in § 813 is clearly and specifically defined, in terms readily comprehensible to the ordinary reader. It provides adequate notice of what conduct is prohibited. The statute makes plain that drugs which have been chemically designed to be similar to controlled substances, but which are not themselves listed on the controlled substance schedules, will nonetheless be considered as schedule I substances if 1) they are substantially similar chemically to drugs that are on those schedules; 2) if they produce simi-

---

**1.** Here, the Court **FINDS** beyond a reasonable doubt from the undisputed evidence that the Defendant manufactured the AMT and "Foxy" for human consumption.

**2.** *See* Controlled Substances Act, *21 U.S.C. §§ 801 et seq.* Section 812(c) specifies that 3,4 methylenedioxyamphetamine is a schedule I controlled substance.

lar effects on the central nervous system as drugs that are on those schedules; or 3) are intended or represented to produce effects similar to those produced by drugs that are on those schedules. There is nothing vague about the statute. *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir.1990).

The Sixth Circuit held that the fact that the Analogue Act does not specifically list the chemicals that are controlled substance analogues does not necessarily render the Act unconstitutionally vague. *United States v. Hofstatter*, 8 F.3d 316 (6th Cir. 1993), *cert. denied*, 510 U.S. 1131, 114 S.Ct. 1101, 127 L.Ed.2d 413 (1994). The court noted that such a list might be impossible to obtain due to the creativity of amateur chemists. *Id.* at 322. The court held that the Act's requirement that the analogue be "intended for human consumption" "sufficiently constrains law enforcement officials and discourages arbitrary or discriminatory application of the law." *Id.*

The Eleventh Circuit held that the Analogue Act was not void for vagueness as applied to MDMA[3] where the defendants had actual notice that possessing precursor chemicals was prohibited. *United States v. Carlson*, 87 F.3d 440 (11th Cir.1996), *cert. denied*, 522 U.S. 895, 118 S.Ct. 238, 139 L.Ed.2d 169 (1997).

In *United States v. Fisher*, the Eleventh Circuit held that the Analogue Act was not unconstitutionally vague as applied to gamma-butyrolactone (GBL) as an analogue of gamma-hydroxybutyrate acid (GHB), a schedule I controlled substance because its chemical structure and effect on the central nervous system were substantially similar to GHB. 289 F.3d 1329 (11th Cir. 2002).

Although noting that the statute may be constitutionally applied in other contexts, a Colorado district court held that the Analogue Act was unconstitutionally vague as applied to AET.[4] *United States v. Forbes*, 806 F.Supp. 232 (D.Colo.1992). The court granted the defendant's motion to dismiss because there was no scientific consensus that AET had a chemical structure that was substantially similar to DMT or DET and therefore there was no way for the defendant to determine in advance whether AET was substantially similar to a controlled substance. *Id.* at 238. The court expressed concern that the analogue definition as applied to AET would permit arbitrary enforcement. *Id.* at 238–39. The court noted that the defendant had been investigated for the same offense two years prior, but the government did not prosecute at that time because a Drug Enforcement Administration (DEA) chemist had concluded that AET was not substantially similar to DMT or DET. *Id.*

### 1. The Analogue Act is not unconstitutionally vague on its face.

 Defendant first argues that the Analogue Act is unconstitutionally vague and constitutes an *ex post facto* law because the Defendant has no reasonable basis for knowing what substance is illegal if it is not actually and properly defined as an illegal substance by the appropriate statutes as administered by the Secretary of Health and Human Services. However, as the preceding discussion indicates, the constitutionality of the Analogue Act is well established. The Court

---

**3.** Although initial attempts to temporarily schedule MDMA as a controlled substance were invalidated, MDMA has since been validly listed as a Schedule I controlled substance.

**4.** AET has since been listed as a schedule I controlled substance. *See* Placement of Alpha–Ethyltryptamine into Schedule I, 59 Fed. Reg. 46757 (Sept. 14, 1994).

finds the Analogue Act is sufficiently precise and agrees that failure to specifically list controlled substance analogues does not necessarily render the statute unconstitutionally vague. *See, e.g., Fisher,* 289 F.3d at 1337 n. 11;[5] *Hofstatter,* 8 F.3d at 322. The very purpose of the statute, which is to prevent development of new drugs by underground chemists attempting to create new drugs that are not scheduled, necessitates some elasticity and prevents a specific listing of chemical analogues. This important legislation illustrates the futility of relying upon attempts to control the importation of existing controlled substances, when domestic underground chemists can create synthetic ones with the potential to be equally, or more, dangerous. The language of the statute provides specific restraints on law enforcement when it defines a controlled substance analogue and requires that it be intended for human consumption. Accordingly, the Court **FINDS** that the Analogue Act is not unconstitutionally vague on its face.

### 2. The Analogue Act is not unconstitutionally vague as applied to "Foxy" and AMT.

■ Defendant also argues that the Analogue Act is unconstitutionally vague as applied to "Foxy" and AMT because it neither fairly nor effectively safeguards against arbitrary enforcement. Here, however, the Defendant had actual notice of the Analogue Act and researched and discussed its applicability, thus foreclosing a vagueness challenge in the instant case. Witnesses testified that the Defendant showed them at least one website warning that "Foxy" could be prosecuted under the Analogue Act. The Defendant's roommate testified that when he asked the Defendant about the legality of the drug, the Defendant responded that it was not classified as a controlled substance, but that the "drug look alike act" might apply. Furthermore, like the defendant in *Carlson,* this Defendant attempted to conceal his activity from law enforcement. Firstly, the Defendant attempted to obtain precursor chemicals from a supplier alleging that he was a research company conducting a study of their pharmacological effects. Secondly, prior to the search of his apartment, the Defendant moved the tablet press from his apartment to another location and informed his roommate to flush the pills if the law appeared. Thus, the Court **FINDS** that the Analogue Act is not unconstitutionally vague as applied to the Defendant's alleged manufacture and sale of "Foxy" and AMT under the facts of this case.

### 3. "Foxy" and AMT are Controlled Substance Analogues under the Analogue Act.

Defendant's third argument challenges the applicability of the Analogue Act to "Foxy" and AMT, requiring the Court to determine whether these substances are controlled substance analogues under the statute. After the motion was fully briefed and all of the evidence was presented, the Government raised the issue of whether the Court or a jury should decide whether "Foxy" and AMT are controlled substance analogues of DET and AET, respectively, as defined by the statute. This occurred after the Defendant and the Government had represented to the Court

**5.** Footnote 11 states in part:

Because a controlled substance analogue statute exists, the only step Congress had to take to make GHB analogues illegal was to schedule GHB a controlled substance. It did not have to specifically identify GHB analogues or place all GHB analogues on a list...Therefore, under current law, all substances that meet the definition of a controlled substance analogue are illegal. No list of controlled substance analogues is necessary.

that its decision on the issue would "decide the case." When the Government raised the issue, the Defendant stated he was submitting the issue to the Court for decision and the Government later agreed to submit the issue to the Court. It thus appears to the Court that the issue is properly before it for decision.

■ Before the Court applies the statute, it must first determine the burden of proof to be applied in deciding this motion. The Government has the burden of proving that AMT and "Foxy" are controlled substance analogues. Because this issue is an essential element of the Government's proof, the Court finds the Government has the burden of proving beyond a reasonable doubt that these substances meet the statutory definition of a controlled substance analogue.[6]

The Analogue Act contains three subparagraphs. There is some dispute as to whether the three prongs of the Act are to be read in the disjunctive or whether the Government must prove conjunctively substantially similar chemical structure *and* either substantially similar effects *or* represented to have substantially similar effects. All of the cases that have interpreted the Analogue Act, with one exception, have held it should be interpreted in the conjunctive, meaning that the Government must establish subparagraphs (i) and (ii) or

subparagraphs (i) and (iii). *Compare United States v. Vickery*, 199 F.Supp.2d 1363 (N.D.Ga. May 16, 2002) (holding the Analogue Act must be construed conjunctively to avoid unintended or absurd results), *and United States v. Clifford*, 197 F.Supp.2d 516 (E.D.Va.2002) (holding that the plain meaning of the statute and legislative history requires a conjunctive interpretation), *and United States v. Roberts*, 2001 U.S. Dist. LEXIS 20577, 2001 WL 1646732 (S.D.N.Y. Dec.14, 2001) (same), *and United States v. Forbes*, 806 F.Supp. 232 (D.Colo.1992) (holding that a controlled substance analogue must satisfy clause (i) *and* clauses (ii) *or* (iii)), *with United States v. Greig*, 144 F.Supp.2d 386 (D.Vi.2001) (holding a substance may be a controlled substance analogue if it satisfies section (i), (ii), or (iii)).

This Court adheres to those cases adopting the conjunctive interpretation and finds that the Government has proven at least subparagraphs (i) and (ii) of the statute beyond a reasonable doubt in the instant case.[7] The Defendant presented evidence challenging the Government's claim that the chemical structures of the alleged analogue substances were substantially similar to certain scheduled controlled substances as required by subparagraph (i) of the statute. However, the Defendant did not present evidence to challenge the Gov-

6. Reviewing the case law under the Analogue Act, the Court was unable to find a case specifically addressing the Government's burden of proof. However, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Furthermore, by analogy to cases addressing the burden of proof as to illegal firearms, the Court concludes that the Government must prove beyond a reasonable doubt that these substances meet the statutory definition of a controlled substance analogue. *See, e.g., United States v. Spinner,*

152 F.3d 950 (D.C.Cir.1998) ("To obtain a conviction under [18 U.S.C.] section 922(v)(1), the government must prove beyond a reasonable doubt that the recovered weapon satisfied the statutory requirements."); *United States v. Stout*, 667 F.2d 1347 (11th Cir.1982) ("In a prosecution for illegal possession of firearms, the burden of proof is on the government to prove each element of the offense beyond a reasonable doubt.").

7. No cases have required the Government to prove all three subparagraphs to establish that a substance is a controlled substance under the Analogue Act.

ernment's evidence as to subparagraphs (ii) and (iii) of the statute. With respect to the substantially similar effects prong, the Defendant simply criticized studies in the field cited by the Government, but was unable to cite any contrary studies or even any contrary anecdotal evidence. The Defendant offered no challenge to the Government's evidence as to subparagraph (iii) of the statute.

### i) AMT and "Foxy" have substantially similar chemical structures to AET and DET, respectively.

■ The expert for the Defendant agreed with the Government's experts that AMT and AET have substantially similar chemical structures. Structurally, the only difference between AMT and AET is the addition of one methyl group (one carbon chain). Thus, the Court finds that the chemical structure of AMT is substantially similar to that of AET, a schedule I controlled substance.

■ Although there is greater chemical structural difference between "Foxy" and DET, the Court finds that the chemical structure of "Foxy" is substantially similar to DET. "Foxy" and DET share the same core arrangement of atoms, known as tryptamine.[8] Tryptamine is the core element of a number of hallucinogenic drugs. DET is created by adding two ethyl groups (two carbon chain) to the tryptamine core. "Foxy" is produced by adding a methoxy group ($CH_3O$) to the number 5 carbon in the phenyl ring (6 carbon ring) and changing the diethyl groups (two carbon chain) of DET to diisopropyl (three carbon chain with a branching structure).

The substitutions[9] on "Foxy" and DET increase the lipophilicity of both compounds as compared with tryptamine alone, and thereby prevent them from being metabolized before they enter the brain; thus enabling each compound to penetrate the blood stream and enter the brain. Lipophilicity is an indicator of the ability of a compound to penetrate the blood brain barrier. Significantly, all of the experts agree that Foxy, which is lengthened by one methyl group, has a slightly higher lipophilicity rating than DET, which means it has a greater ability to penetrate the blood stream. The Court finds that the substitutions to "Foxy" and DET, while not identical, are substantially similar. The tryptamine core is intact and therefore identical in the two compounds, and the remaining elements are substantially similar. Both of the Government's experts, Dr. Harvey Lazar, a chemist with the DEA, and Gretchen Feussner, a pharmacologist with the DEA, testified that DET and "Foxy" possessed substantially similar chemical structures.

The Defendant's expert, Dr. Milton L. Brown, a knowledgeable and credible physician and professor of Chemistry at the University of Virginia, distinguished a number of the chemical *properties* of "Foxy" and DET. However, the first prong of the Analogue Act refers to the *structure*, not the properties, of the substances being compared. As Dr. Lazar testified, a chemical compound's properties are not part of its chemical structure. As illustrated by Exhibit B, prepared by Dr. Brown and entitled Chemical Properties Outline, a compound's structure is one of

---

**8.** The attached Exhibit A, prepared by Defendant's expert, Dr. Brown, entitled Structural Transformation, illustrates the chemical structures of Tryptamine, DMT, DET and "Foxy."

**9.** The experts used the term "substitutions" to describe what a layman might refer to as additions to the chemical structures of the compounds in issue. In the experts' analysis, the additions result in a change in an element of a compound; thus, in their terminology, an element containing "additions" is substituted for an original element of a compound.

its properties, but the inverse is not true, and the terms structure and properties are not synonymous. Interestingly, counsel for the Defendant attempted to elicit from Dr. Brown an opinion that the structures of DET and "Foxy" were not substantially similar, but the Court interprets Dr. Brown's testimony, as well as the weight of the evidence, as opining that the properties, as opposed to the structure, were not substantially similar. Accordingly, this Court concludes beyond a reasonable doubt that the chemical structure of "Foxy" is substantially similar to that of DET.

### ii) AMT and "Foxy" have hallucinogenic effects substantially similar to or greater than the hallucinogenic effects of AET and DET, respectively.

AMT, AET, "Foxy" and DET share an identical tryptamine core that, with certain substitutions, can alter the central nervous system and produce significant hallucinogenic effects. Uncontroverted evidence presented by the Government confirms that AMT and AET share substantially similar hallucinogenic effects. Ms. Feussner testified for the Government that AMT and AET are known to have similar hallucinogenic effects. Other witnesses testified that AMT produces hallucinogenic effects lasting from five to ten hours.

The evidence is even more persuasive as to "Foxy." Several witnesses testified regarding the effects of "Foxy," likening it to MDMA, AET, and LSD, all schedule I controlled substances. These witnesses described "Foxy" as producing an initial Ecstasy feeling followed by substantial hallucinogenic effects similar to those of LSD. Although Ecstasy has an amphetamine core and LSD has a tryptamine core, both are hallucinogenic drugs. The comparison of "Foxy" to LSD, DET and AET provides evidence of similar effect because these substances all contain tryp-

tamine. The evidence indicates that tryptamine becomes hallucinogenic when certain substitutions increase its lipophilicity thereby preventing the metabolism of the substance and enabling it to travel to the brain and produce hallucinogenic effects. Although different substitutions may affect the duration and intensity of the effect, the hallucinogenic effects of the various compounds containing tryptamine, including DET, are substantially similar.

Dr. Brown criticized the various studies conducted on "Foxy" and AMT. He testified that such anecdotal reports, affidavits and testimonials are not considered scientifically reliable. However, he acknowledged that his research uncovered no evidence to contradict these findings. The Court **FINDS** that Dr. Brown is attempting to apply the same test for finding a substantially similar stimulant, depressant or hallucinogenic effect under the statute as the medical community requires for the approval of new prescription drugs to be utilized in medical treatment. The Court **FINDS** that the use of the term substantially similar in the Analogue Act creates an entirely different test than the scientific methodology required in the prescription drug approval process.

The studies and anecdotal evidence presented by the Government are unrebutted. For example, although Schulgin and Carter's study on the effects of "Foxy" on humans may not meet the test for scientific methodology applied to the approval process for prescription drugs, it does provide persuasive evidence of the hallucinogenic effects of this drug. The Court classifies the evidentiary weight of the Government's studies as greater than anecdotal, but less than scientifically acceptable in the prescription drug approval process. The cumulative weight of the studies and the anecdotal evidence is sufficient to prove beyond a reasonable doubt that the effects on humans of AMT and

"Foxy" are substantially similar to AET and DET, respectively.[10]

### iii) The Defendant represented that AMT and "Foxy" had hallucinogenic effects substantially similar to or greater than the hallucinogenic effect of a controlled substance in schedule I or II.

Finally, unrebutted evidence establishes that the Defendant represented and intended that the effects of AMT and "Foxy" were substantially similar to the effects of various schedule I controlled substances. Witness testimony established that the Defendant related the effects of these substances to MDMA and LSD and that the Defendant showed witnesses websites that described the hallucinogenic effects of these drugs and compared them to MDMA and LSD. The evidence is not clear that the Defendant represented specifically that AMT and "Foxy" had substantially similar effects as AET and DET, respectively. Because the Court has decided that the Government has met subparagraphs (i) and (ii) of the statutory definition, it need not find whether the represented substance under subparagraph (iii) must be the same as the substance which has a substantially similar chemical structure under subparagraph (i). An argu-

ment can be made that subparagraphs (i) and (iii) need not match up as to substance although, in the view of this Court, subparagraphs (i) and (ii) must so match. However, the Court **FINDS** this issue to be moot and declines to decide it.

### SUMMARY

Thus, the Court **FINDS** that AMT and "Foxy" are controlled substance analogues of AET and DET, respectively, as defined by the Analogue Act. The Court bases its decision upon the expert witness testimony, the evidence of studies and the anecdotal evidence which cumulatively prove beyond a reasonable doubt that the Government has met the definition of controlled substance analogue under subparagraphs (i) and (ii) of the Analogue Act. The Court further **FINDS** that the Analogue Act is not unconstitutionally vague on its face or as applied in the instant case.

### ORDER

The Court **DENIES** the Defendant's motion to dismiss the indictment. The Clerk is **REQUESTED** to mail a copy of this Order to all counsel of record.

It is so **ORDERED.**

---

**10.** Much of the Government's anecdotal evidence focused on the similar effects on humans of "Foxy" on the one hand and Ecstasy and LSD on the other. However, it is not sufficient to prove that DET and "Foxy" have substantially similar chemical structures and rely upon another substance, such as Ecstasy or LSD, to meet the second prong of substantially similar effect. Such is not the evidence here, as the Government did prove beyond a reasonable doubt that DET and "Foxy" have both chemical structures and effects on humans which are substantially similar.

EXHIBIT A
(Structural Transformation)

# Structural Transformation

Tryptamine

DMT

DET

5-MeO-DIPT

**Conclusion:** Clear structural differences in two regions

**Conclusion:** 5-MeO-DIPT is 3 transformations removed from DET

EXHIBIT B
(Chemical Properties Outline)

# Chemical Properties Outline

Tryptamine DMT DET 5-MeO-DIPT

- Comparison of properties of chemical structure
 - Lipophilicity (ability to penetrate blood:brain barrier)
 - Molecular formula
 - Molecular weight
 - Atomic composition
 - Chemical formula
 - Dipole
 - NMR chemical shifts
 - Volume
 - Charge
 - Structure