**UNITED STATES of America,**

v.

**Billy VICKERY**

**No. CR. 101CR34603ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

May 16, 2002.

Catherine M. O'Neil, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, for Plaintiff.

W. Carl Lietz, III, Federal Defender Program, Atlanta, GA, for Defendants.

## ORDER

EVANS, District Judge.

This criminal action is presently before the court on objections to United States Magistrate Linda Walker's Report and Recommendation (R & R) dated March 8, 2002, wherein she recommended denying Defendant's motion to define the elements of the offense. Defendant filed timely objections to the R & R on March 22, 2002. The Government did not respond. For the reasons set forth below, the R & R is rejected. Defendant's motion to define the elements of the offense is granted.

The court notes that Judge Walker previously issued a Report and Recommendation, dated December 21, 2001, wherein she recommended that this court deny Defendant's motion to dismiss based upon the Non–Delegation Doctrine [# 33], deny Defendant's motion to compel the Government to define immediately the phrase "substantially similar" [# 34], and deny Defendant's motion for a Bill of Particulars [# 36]. On January 7, 2002, the undersigned entered an order granting Defendant's request to file objections to the December R & R following the resolution of remaining issues in the March R & R. In a footnote within Defendant's Objections to the Report and Recommendation, Defendant withdrew the pretrial motions discussed in the December R & R. Accordingly, the court will not adopt the December R & R, as the issues contained therein are moot.

Turning to the remaining R & R, when a party files timely objections to a magistrate judge's recommended disposition of a motion to suppress evidence in a criminal case, a district judge must make a de novo determination as to any portion of the disposition or specified proposed findings to which the party objects. 28 U.S.C. § 636(b)(1)(B). Accordingly, the undersigned must review the objected-to portions of the March 5, 2001, R & R on a de novo basis.

As neither party objected to the background facts as set forth by the Magistrate Judge, the court adopts the R & R's proposed findings of facts as part of the opinion of this court and quotes from those facts below. On May 1, 2002, a grand jury serving in this district returned an eleven count indictment against Mark Zivitz, Gary Zivitz, and Billy Vickery for violations of 21 U.S.C. §§ 802(32), 813, 841(b)(1)(C) and 846.[1] Specifically, the indictment alleges that Defendant Vickery conspired in the Northern District of Georgia and elsewhere with the Zivitz Co-Defendants and others to knowingly and intentionally possess with intent to distribute gamma hydroxybutyric acid ("GHB"), a Schedule I controlled substance, and gamma butyrolactone ("GBL"), a controlled substance analogue intended for human consumption, in violation of Title 21 of the United States Code, Sections 802(32), 813, 841(b)(1)(C) and 846. Defendant Vickery was also indicted for knowingly and intentionally distributing 1,4 butanediol, a controlled substance analogue intended for human consumption, as well as racketeering in violation of 18 U.S.C. § 1952(a)(3) and (2).

The Government contends that if this case proceeds to trial against Defendant Vickery, its evidence will include, among other things, consensually-monitored tape recorded testimony of Co–Defendants Mark and Gary Zivitz and Defendant Vickery agreeing to procure and distribute GHB and GBL, a controlled substance analogue intended for human consumption. The Government further alleges that over a period of several months, Defendant

1. Co–Defendants Mark and Gary Zivitz entered guilty pleas on September 10, 2001, before the undersigned and are awaiting sentencing.

Vickery received several shipments of bottled liquid, including products identified as "Verve" and "Blue Nitro" from one or both of the Zivitz Co–Defendants. The Government contends that the evidence will show that Defendant Vickery then distributed the liquid to others for profit.

Additionally, the Government asserts that according to its laboratory analysis, the bottled liquids contained either a combination of GHB and GBL or pure GBL. Further, it alleges that, in late 2000, either one or both of the Zivitz Co–Defendants and Defendant Vickery sought to obtain larger quantities of the liquid. The Government contends that Vickery contacted a possible source of supply and received a sample of the product that the supplier had available, and, on January 15, 2001, Vickery allegedly sent a sample of that product to a cooperating individual. The Government asserts that its analysis of the sample shipped to the cooperating individual contained 1,4 butanediol, a chemical which it contends is also a controlled substance analogue of GHB. The Government further contends that GBL is also a controlled substance analogue of GHB.

The issue presented in Defendant's motion to define the elements of the offense is one of statutory interpretation. All of the counts under which Defendant Vickery was charged involve allegations that he violated 21 U.S.C. § 813. Under Section 813, "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813. The phrase "controlled substance analogue" is defined in the following manner:

[T]he term "controlled substance analogue" means a substance -

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32).[2] At issue in the instant matter are three substances: (1) GHB; (2) GBL; and (3) 1,4 butanediol. While GHB appears to be a schedule I substance, GBL and 1,4 butanediol are not, requiring the Government to prove those substances are "controlled substance analogues" to GHB.

Because Defendant and the Government disagree as to what the Government has to prove in a case involving an alleged "controlled substance analogue," Defendant filed a motion to define the elements of the offense that is the subject of the instant R & R. Defendant argued before the Magistrate Judge that in order for a substance to be classified as a "controlled substance analogue" under section 802(32), the substance must meet the following portions of the definition set forth above: (i) and (ii); or (i) and (iii). Such an interpretation

**2.** Collectively, those statutes comprise the Controlled Substance Analogue Enforcement Act of 1986 ("The Analogue Act"), passed as part of the comprehensive Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207.

requires the statute to be read in the conjunctive (i.e., "(i) *and* (ii); or (i) *and* (iii)").

Conversely, the Government argues that the statute must be read as containing three co-equal, dependent clauses. The Government's interpretation requires the statute to be read in the disjunctive (i.e. "(i), *or* (ii), *or* (iii)"). Under a disjunctive reading, proof of any one of the three subsections suffices in a prosecution for trafficking in analogue.

The United States Court of Appeals for the Eleventh Circuit has not addressed this precise issue. In fact, when presented the issue, the Eleventh Circuit chose not to resolve it, finding that the substance at issue satisfied both subparagraphs (i) and (ii). *United States v. Fisher,* 289 F.3d 1329 (11th Cir.2002) (holding that the Analogue Act was not unconstitutionally vague as applied to classify unlisted substance GBL as an analogue of GHB). Only four District Courts and no Courts of Appeal have directly addressed this issue of statutory interpretation.

The Magistrate Judge recommended interpreting the statute in the manner espoused by the Government, requiring it to prove the substance is a controlled substance analogue under either clause (i), or (ii), or (iii) of Section 802(32)(A). The thrust of the R & R is that the plain language of the statute unambiguously supports a disjunctive reading based on the structure of the statute having three separate clauses, with the last two sections separated by an "or." The R & R states: "As a general rule of statutory construction, an 'or' placed before the last term in a series indicates that each term in the series is intended to be read in the disjunctive and given separate meaning." [R & R at 5, citing *United States v. Urban,* 140 F.3d 229, 232 (3d Cir.1998) ("Canons of construction ordinarily suggest that terms

connected by a disjunctive be given separate meanings unless the context dictates otherwise.")]. The Magistrate Judge declined to adopt a conjunctive reading of the statute, which would require her to imply the word "and" between clauses (i) and (ii), and concluded that the statute was unambiguous in its plain language.

The R & R considered three United States District Court decisions interpreting Section 802(32)(A). *Compare United States v. Greig,* 144 F.Supp.2d 386 (D.Vi. 2001) (holding that a substance containing wax and flour and misrepresented to be crack cocaine was a controlled substance analogue if it fell under subsections (i), or (ii), or (iii) of Section 80232(A)), *with United States v. Roberts,* 2001 WL 1646732 (S.D.N.Y.2001) (concluding that products containing 1,4 butanediol were controlled substance analogues of GHB if they met clauses (i) and (ii), or clauses (i) and (iii) of Section 80232(A)), *and United States v. Forbes,* 806 F.Supp. 232 (D.Colo.1992) (holding that AET, an antidepressant having similar chemical structures to schedule I controlled substances, could be a controlled substance analogue only if it met both the chemical structure and the pharmacological effect prongs of statute (i.e., (i) and (ii); or (i) and (iii))). The R & R recommends that the analysis in *Greig* is persuasive and more consistent with the legislative history of the Analogue Act.

Lastly, the Magistrate Judge reviewed the legislative history of the Analogue Act both in the House of Representatives and in the Senate. She concluded that "the final version of the bill shows that Congress ultimately rejected the House's more rigid version of the legislation in favor of the more flexible approach requested by the Department of Justice and adopted by the Senate." [R & R at 11–12]. Thus, the R & R recommends that the undersigned adopt the Government's disjunctive read-

ing of the statute as three separate dependent clauses.

Defendant filed timely objections to the Magistrate Judge's recommended disposition. First, Defendant objects to the R & R's interpretation of the plain language of the statute as ignoring the placement of the word "which" in the first clause of the statute.

> As pointed out by the defendants and by the court in *United States v. Forbes*, 806 F.Supp. 232 (D.Colo.1992), the operative segments of the second and third prongs of 21 U.S.C. § 802(32)(A) both begin with the word "which," signaling the start of a dependent relative clause modifying a precedent noun. The precedent noun could be read to be the phrase "chemical structure" in clause (i), as the *Forbes* court suggested in its opinion. When one considers that the word "which" in the first prong of the statute is in the middle of the phrase, the lack of parallel construction indicates that the three prongs of the statute were not necessarily intended to be equally subordinate.

*Roberts*, 2001 WL 1646732 at * 3. (internal citations omitted). Finding such analysis persuasive, this court rejects the approach of the R & R and in *Greig* that because "[e]ach of the three subordinate clauses occupies the same structural position of subordination relative to the main clause, and each is separated by a semicolon, with the last two clauses being separated by the disjunctive 'or.' As a general rule of statutory construction, an 'or'," each of the series is intended to be read disjunctively. *Greig*, 144 F.Supp.2d at 389. While agreeing in principle with that point, the undersigned does not find it conclusive as to the construction of the statute herein.

In addition to the parallel structure argument, the District Court in the Eastern District of Virginia recently pointed out that Congress did not always follow the rule of construction as advocated by the Court in *Greig* when drafting the statute. *United States v. Clifford*, 197 F.Supp.2d 516 (E.D.Va.2002) (reading the statute conjunctively). In *Clifford*, the Court noted that in a different part of the statute, specifically Section 802(9), "Congress listed a number of subordinate clauses in a fashion similar to Section 802(32)(A), but placed the term 'or' after every subsection to denote a clear disjunctive intent." *Id.*, citing 21 U.S.C. § 802(9).

> Congress itself does not invariably follow the convention advocated in *Greig*, nor is there any certain means of determining when it intends to do so and when it does not. Thus, the mere existence of "or" between the last two subordinate clauses cannot be taken to be conclusive evidence that Congress intended all the subordinate clauses to be read in the disjunctive. And, this point alone suggests that there is an ambiguity in whether the subordinate clauses should be accorded the disjunctive interpretation or the conjunctive interpretation.

*Clifford*, 197 F.Supp.2d at 518. Further, that Court found that the settled meaning of the term "analogue" would be inconsistent with the disjunctive interpretation of the statute.

> An analogue, defined in the chemical context, is a "structural derivative of a parent compound that often differs from it by a single element." This definition fits well within subsection (i), but not within either subsections (ii) or (iii). Accordingly, only a conjunctive interpretation of the subsections {(i) and [ (ii) or (iii) ]} is faithful to the plain meaning of analogue. This point, if not conclusive in favor of the conjunctive interpretation, is surely compelling evidence of the statute's ambiguity in this regard.

*Id.*, 197 F.Supp.2d at 520; *see also Forbes,* 806 F.Supp. at 236 (considering expert scientific testimony and finding that the question of structural similarity must, to an extent, be evaluated in conjunction with the molecule's hallucinogenic and stimulant activity, supporting a dependent two-prong test).

■ Thus, the undersigned rejects the plain language approach taken by the Magistrate Judge and finds that, at the least, there is an ambiguity in the structure of the statute. "Because both clauses (ii) and (iii) can be read to modify clause (i), the statutory language can be fairly read as requiring the two-prong definition" asserted by Defendant. *Forbes,* 806 F.Supp. at 235. "Given this ambiguity, the interpretive task appropriately expands to include consideration of the statute's purpose, as reflected in its language and structure as a whole and in its legislative history." *Id.,* citing *United States v. Jackson,* 759 F.2d 342, 344 (4th Cir.1985).

Next, Defendant objects to the Magistrate Judge's analysis of the legislative history insofar as she suggests Congress adopted the Senate's version of the Act. This court does not find the legislative history particularly helpful to either side of this argument. That is because the available legislative history concerns the versions of the bill drafted by the Senate and the House as opposed to the compromise final version that became law.

The stated purposes of the two versions of the bills were quite similar. The Senate version of the bill was aimed at confronting the problem of circumvention of the drug laws "by profiteers capable of making minor alterations in the molecular structure of a controlled substance." S.Rep. No. 196, 99th Cong., 1st Sess. 5, at 1–2 (1985). The Senate version had a two-part definition of the term analogue: either the substance has a substantially similar chemical structure *or* it was "specifically designed" to produce an effect substantially similar to schedule I or II drugs. *Id.*

Similarly, the stated purpose of the House bill was to thwart underground chemists who create new drugs that are not scheduled in order to evade the drug laws. H.R.Rep. No. 848, 99th Cong., 2d Sess. 4 (1986). The House version read:

The term 'controlled substance analogue' means a substance -

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; *and*

(ii)(I) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system; or

(II) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to [that] of a controlled substance.

*Id.* (emphasis added).

The final version resembles the structure of the House version more closely but two significant changes were made: (1) the word "and" placed after subsection (i) was dropped; and (2) the structural (ii)(I) and (II) was changed to just (ii) and (iii). The Magistrate Judge and other courts have speculated about why those changes were made. Particularly those supporting the disjunctive reading argue that the removal of the word "and" as well as the structural change to the subparts was an intentional step away from the conjunctive approach. However, the final version did not revert back to the Senate's two part disjunctive structure that included specific intent.

No formal conference was held between the House and the Senate to resolve the conflicts in their respective Bills. *See* "Congress Clears Massive Anti–Drug

Measure," 42 Cong. Q. Almanac 92, 98 (1986). An informal meeting was held with approximately two dozen House members and nine Senators, which resulted in resolution of the outstanding differences between the House and Senate versions and allowed adoption by both. *Id.* There is no record of that informal conference and thus no legislative history for the rationale behind the changes that produced the final version of the Act.

The two bills were unambiguous in that the Senate version was clearly disjunctive and the House version was clearly conjunctive. A record documenting the compromise session that produced the final version at issue herein would have been the key to understanding the changes made, particularly the Congressional intent behind the removal of the word "and" following the first clause of the House version. As noted in *Clifford:*

> Indeed, it is just as likely that the [removal of "and"] was inadvertent as that it was deliberate. Had the change been deliberate, it would have effected a quite radical alteration in the statute's scope; criminalizing not just designer drug trafficking, but also distribution of all manner of lawful substances merely because they are represented to be listed substances. Such a radical alteration would surely have occasioned some comment or remark from Congress. The silence in this regard speaks loudly in favor of inadvertence as the explanation for the change.

*United States v. Clifford,* 197 F.Supp.2d at 520. Thus, given the lack of recorded history regarding the compromises that produced the final version of the Analogue Act, the undersigned does not find support in the legislative history for the Magistrate Judge's speculation that the Senate's more flexible disjunctive version of the bill was in fact adopted by Congress.

■ At this juncture, the court introduces another canon of statutory interpretation: a statute must be construed to avoid unintended or absurd results. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). A reading of clause (ii) independently results in alcohol or caffeine becoming a controlled substance analogue, given the depressant or stimulant effect such substances have in concentrated form. *Forbes,* 806 F.Supp. at 235; H.R.Rep. No. 848, 99th Cong., 2d Sess. 4, at 7 (1986). Without tying the first clause of the statute in with the latter clauses, the statute loses its link between the unknown drugs and the drugs already controlled under the Controlled Substance Act, which is critical to the Act's stated purpose. H.R.Rep. No. 848, 99th Cong., 2d Sess. 4, at 6 (1986).

In addition, Defendant argues that the R & R's interpretation of the legislative history produces a statute far more lenient than even the Senate version, under which the Government was required to prove "substantially similar" chemical structure or "substantially similar" effect. The Senate did not include a provision pertaining to represented or intended effect.

Under the disjunctive reading espoused in the R & R, the Government can prevail by merely establishing prong (iii), which reads:

> (iii) with respect to a particular person, which such person *represents or intends* to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II

21 U.S.C. § 802(32)(A)(iii)(emphasis added). There is no evidence that the Senate advocated such a position. Further, Defendant argues that the disjunctive inter-

pretation results in the "necessary conclusion that Congress rejected the House's version and passed a statute that is much broader than the one envisioned by the Senate." [Def. Obj. at 10].

For example, treating clause (iii) independently likens the Analogue Act to a counterfeit drug statute because a substance such as powdered sugar could be considered an analogue if a defendant represented it was cocaine even though it lacks a chemical structure substantially similar to a schedule I or II controlled substance. *Forbes*, 806 F.Supp. at 235. This issue was explored most recently in *Clifford*, wherein the central issue involved whether pills containing ginseng and vitamin B and represented to be 3,4–methylenedioxymethamphetamine fit within the statutory definition of a controlled substance analogue in Section 802(32)(A). *Clifford*, 197 F.Supp.2d at 521. The Court held it did not, following a conjunctive interpretation of the statute, and citing *United States v. Sampson*, 140 F.3d 585 (4th Cir.1998) as instructive in this regard, although *Sampson* did not involve the Analogue Act.

In *Sampson*, the United States Court of Appeals for the Fourth Circuit held that "flex," a mixture of flour, wax, and baking soda, although sold as cocaine, was not a "counterfeit substance," as defined in 21 U.S.C. § 802(7). *Sampson*, 140 F.3d at 589. In reaching this result, Judge Motz observed:

> Selling flex does not constitute a crime punishable by any known federal law. Simply because a substance looks like cocaine, and the defendant misrepresents to his unsuspecting purchaser that the substance is cocaine, does not make the mere distribution of that substance a violation of the federal narcotics laws.

*Id.* at 589 (emphasis added). Applying that logic to the Analogue Act, the Court in *Clifford* continued:

> By the same token, passing off ginseng and vitamin B as MDMA is not 'punishable by any known federal law.' To be sure, as the government argues, this statement was made in the context of Section 802(7), which defines counterfeit substances, not Section 802(32)(A), which defines controlled substance analogues, and is therefore arguably dictum. Yet, there is no reason to believe that Judge Motz and the panel were unaware of Section 802(32)(A) when they made this remark.

*Clifford*, 197 F.Supp.2d at 521.

■ This court finds such reasoning persuasive and agrees that to allow the Government to succeed in a prosecution under the Analogue Act by proving only subsection (iii) of the statute results in an application much broader than the stated purpose of the statute—thwarting evasion of the drug laws by underground chemists who create new drugs. *See* H.R.Rep. No. 848, 99th Cong., 2d Sess. 4 (1986); S.Rep. No. 196, 99th Cong., 1st Sess. 5, at 1–2 (1985). There is no indication in the legislative history that "Congress intended to cover and criminalize the sales of legal substances such as flour, salt, ginseng, vitamin B, etc., merely because the seller represents they will yield a stimulant, depressant, or hallucinogenic effect like that of a controlled substance." *Clifford*, 197 F.Supp.2d at 520.

In fact, the Senate noted an intent to exclude such substances as "alcohol, tobacco, caffeine, and other legitimate consumer products from the controlled substance analog category." S.Rep. No. 196, 99th Cong., 1st Sess. 5, at 5–6 (1985). Although the Senate effected the exclusion such products by requiring specific intent, whereas the House limited such overbreadth by its conjunctive two-prong test,

[t]here is no indication in the legislative history that Congress intended to dispense with both limiting provisions and create a statute in which nearly any substance could be prosecuted as a controlled substance analogue. Because the Senate language has entirely disappeared from the statute, the intent of Congress to limit its scope can best be given effect through the conjunctive interpretation.

*Roberts,* 2001 WL 1646732 at *5.

Thus, Section 802(32)(A) must be construed conjunctively to avoid such unintended or absurd results. Accordingly, this court joins the three other District Courts that have so ruled. *United States v. Clifford,* 197 F.Supp.2d 516 (E.D.Va. 2002); *United States v. Roberts,* 2001 WL 1646732 (S.D.N.Y.2001); *United States v. Forbes,* 806 F.Supp. 232 (D.Colo.1992).[3]

█ Lastly, the court notes that it is unnecessary to invoke the rule of lenity, as urged by Defendant, in reaching the conclusion that the conjunctive reading applies. Courts "only invoke the rule of lenity when, after considering the structure and purpose of a criminal statute, [they] are left with nothing more than a guess as to what Congress intended." *U.S. v. McClain,* 252 F.3d 1279, 1287 n. 15 (11th Cir.2001); *U.S. v. Maldonado–Ramirez,* 216 F.3d 940 (11th Cir.2000). Upon

consideration of the purpose of the statute in conjunction with its language and structure, "it is clear that Congress intended Section 802(32)(A) to be read conjunctively." *Clifford,* 197 F.Supp.2d at 521.

Therefore, for the reasons set forth above, the court declines to adopt the R & R's recommended disposition and GRANTS Defendant's motion to define the elements of the offense. The undersigned holds that a substance may be a controlled substance analogue only if it satisfies clauses (i) and (ii), or clauses (i) and (iii) of 21 U.S.C. § 802(32)(A).

Accordingly, the R & R [# 69] is hereby REJECTED. The December R & R [# 66] is DISMISSED AS MOOT. Defendant's motion to define the elements of the offense [# 54] is GRANTED.

---

**3.** Both parties brought to the attention of the Magistrate Judge decisions from Circuit Courts of Appeals, wherein those Courts mentioned the Analogue Act and use either the conjunctive or disjunctive in discussing the statute. *See e.g. McKinney v. United States,* 2000 WL 1010581, at * 2, 221 F.3d 1343 (8th Cir.2000)(assuming without holding that the definition is a two-prong test); *United States v. Granberry,* 916 F.2d 1008 (5th Cir.1990) (paraphrasing the definition in the disjunctive). As none of those cases involve the question of statutory interpretation presented herein, the court finds such dicta unpersuasive and inapplicable.

Similarly, the court disagrees that *United States v. Carlson,* 87 F.3d 440 (11th Cir.1996), wherein the Eleventh Circuit distinguished *Forbes* on its facts, represents an implicit acceptance of that Court's conjunctive approach to the statute given the Eleventh Circuit's silence on the issue. Indeed, that silence represents only that the Eleventh Circuit chose not to address the issue of interpretation, and thus is hardly support for a conjunctive reading of the statute. *See Fisher,* 2002 WL 832402 at * 5, ⸺ F.3d at ⸺ (expressly declining to decide this precise issue).